FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 07, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JEREMY LEE D., | NO. 1:24-CV-3132-TOR |
| Plaintiff, | |
| v. | |
| LELAND DUDEK,[1] Acting Commissioner of Social Security, | ORDER GRANTING PLAINTIFF'S OPENING BRIEF |
| Defendant. | |

BEFORE THE COURT is Plaintiff's Opening Brief (ECF No. 9) and Commissioner's Brief (ECF No. 12).  This matter was submitted for consideration without oral argument.  The Court has reviewed the administrative record and the parties' completed briefing, and is fully informed.  For the reasons discussed

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Leland Dudek, Acting Commissioner of Social Security, is substituted as the named Defendant.

ORDER GRANTING PLAINTIFF'S OPENING BRIEF ~ 1

below, Plaintiff's Opening Brief (ECF No.9) is **GRANTED** and Commissioner's

Brief (ECF No. 12) is **DENIED**.

## JURISDICTION

The Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited: the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)).  "Substantial evidence" means

relevant evidence that "a reasonable mind might accept as adequate to support a

conclusion." *Id.* at 1159 (quotation and citation omitted).  Stated differently,

substantial evidence equates to "more than a mere scintilla[,] but less than a

preponderance." *Id.* (quotation and citation omitted).  In determining whether this

standard has been satisfied, a reviewing court must consider the entire record as a

whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are

supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that [he or she] is not only unable to do [his or her] previous work[,] but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §

416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the

claimant's "residual functional capacity."  Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work").  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience.  *Id.*  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

1    The claimant bears the burden of proof at steps one through four above.

2    *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

3    step five, the burden shifts to the Commissioner to establish that (1) the claimant is

4    capable of performing other work; and (2) such work "exists in significant

5    numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*,

6    700 F.3d 386, 389 (9th Cir. 2012).

7                                   **ALJ'S FINDINGS**

8        Plaintiff initially filed a Title XVI claim on September 30, 2014.  Tr. 17.

9    The claim was denied on December 8, 2014 and upon reconsideration on April 14,

10   2015.  A different administrative law judge ("ALJ") found Plaintiff to not be

11   disabled and denied his claim on August 24, 2018.  *Id.*

12       On November 17, 2020, Plaintiff again filed an application for Title XVI

13   supplemental security income benefits, alleging a disability onset date of August

14   25, 2018.  *Id.*  The application was denied initially on November 3, 2021, and upon

15   reconsideration on May 3, 2022.  *Id.*  Plaintiff appeared at a telephonic hearing

16   before an ALJ on November 30, 2023.  *Id.*  The ALJ concluded that the

17   presumption of continuing non-disability had been rebutted with a new severe

18   impairment of degenerative disc disease.  *Id.*  However, on February 26, 2024, the

19   ALJ denied Plaintiff's second claim.  Tr. 30.

20

At step one of the sequential evaluation analysis, the ALJ found Plaintiff had not engaged in substantial gainful activity since November 17, 2020, the application date. Tr. 19. At step two, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease, cervical and lumbar spine; posttraumatic stress disorder; attention deficit hyperactivity disorder; intermittent explosive disorder; antisocial personality disorder; and cannabis use disorder. *Id.* At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 20. The ALJ then found that Plaintiff had the RFC to perform medium work as defined in 20 C.F.R § 416.967(c) with the following limitations:

> [Plaintiff] can stand and/or walk for six out of eight hours; he can sit for six out of eight hours; he can frequently reach overhead, push, and/or pull with his bilateral upper extremities; he can frequently but not constantly handle, finger, and feel with the bilateral upper extremities; he can understand, remember and carry out simple, routine and repetitive tasks involving only simple work related decisions and occasional decision making and changes in the work setting; he can never perform assembly line work; he can tolerate occasional, brief and superficial interaction with the public.

Tr. 21-22.

At step four, the ALJ found that Plaintiff had no past relevant work. Tr. 28. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from a vocational expert, there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform,

ORDER GRANTING PLAINTIFF'S OPENING BRIEF ~ 7

such as garment sorter, marker, and router.  Tr. 29.  The ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from November 17, 2020 through February 26, 2024, the date of the ALJ's decision.  *Id.*

On July 7, 2024, the Appeals Council denied review, Tr. 1, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly assessed Plaintiff's medically determinable impairments.

2. Whether the ALJ properly weighed Plaintiff's symptom testimony; and

3. Whether the ALJ properly weighed the medical opinion evidence.

ECF No. 9 at 2.

## DISCUSSION

### A. Medically Determinable Impairments

Plaintiff contends the ALJ erred where she (1) failed to properly consider evidence of Plaintiff's right hand impairment and (2) improperly found Plaintiff's hernias were non-severe.  ECF No. 9 at 5-7.

At step two of the sequential evaluation process, the ALJ considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(c).  Step two is "a de minimis screening device [used] to dispose of groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  "Thus, applying our normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had substantial evidence to find that medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments."  *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

Plaintiff argues the ALJ failed to consider any specific upper extremity order at step two despite Plaintiff punching the ground in October 2022 and his own reporting that he suffered severe limitations in the use of both hands from carpal tunnel and his neck disorder.  ECF No. 9 at 5.

As an initial matter, Plaintiff's contention that pursuant to Administrative Ruling ("AR") 97-4(9), the ALJ was required to adopt the prior ALJ's findings that Plaintiff suffered from a severe impairment of status post-right wrist fracture is in error.  ECF No. 9 at 5.  AR 97-4(9) (SSA) (Dec. 3, 1997), *available at* 1997 WL 742758.  AR 97-4(9) explains that in light of Ninth Circuit's decision in *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988), when an ALJ in a state subject to the Ninth Circuit's jurisdiction is adjudicating subsequent claims of disability involving an unadjudicated period

1 adjudicators will apply a presumption of continuing nondisability and

2 determine that the claimant is not disabled with respect to that period,

 unless the claimant rebuts the presumption. . . . If the claimant rebuts

3 the presumption, adjudicators then must give effect to certain findings,

 as explained below, contained in the final decision by an ALJ or the

4 Appeals Council on the prior claim, when adjudicating the subsequent

 claim. For this purpose, this Ruling applies only to a finding of a

 claimant's residual functional capacity, education, or work experience .

5 . . .

6 AR 97-4(9), 1997 WL 742758, at *3.

7 Thus, AR 97-4(9) does not apply to prior findings of severe impairments. *See,*

8 *e.g.*, *Elizabeth C. v. Comm'r of Soc. Sec.*, No. C20-5025-BAT, 2021 WL 62438, at

9 *3 (W.D. Wash. Jan. 7, 2021) (explaining ALJ omitted several severe impairments

10 found in prior decision but only reversibly erred by failing to give res judicata

11 effect to the prior decision's RFC findings).  Plaintiff's argument that the ALJ

12 reversibly for failing to adopt the prior severe impairments therefore fails.

13  As for Plaintiff's right hand impairments, the Court finds the ALJ committed

14 error.  The ALJ mentions other impairments that have occurred sporadically such

15 as right hand cellulitis and hernia but does not mention or explicitly address

16 Plaintiff's reported limitations and pain in using both hands or his carpal tunnel

17 syndrome at step two.  Tr. 20.  Where an ALJ fails to assess an alleged impairment

18 at step two, such an error is harmless where the ALJ adequately considered any

19 limitations imposed by the condition at step four.  *See Lewis v. Astrue*, 498 F.3d

20 909, 911 (9th Cir. 2007).  Here, the ALJ did reference Plaintiff's complaints of

upper extremity pain and manipulative dysfunction at step four but ultimately found Plaintiff's reported severity and frequency of symptoms to not be corroborated by the medical evidence.  Tr. 22.  As the Court explains below, the ALJ did not properly discount Plaintiff's subjective symptom testimony, therefore, the Court finds the ALJ did not adequately consider Plaintiff's right hand impairments.  This error was not harmless as the RFC's limitations on Plaintiff's manipulative functioning to frequent was in part based on the ALJ discrediting Plaintiff's subjective symptom testimony.  Therefore, on remand, the ALJ will properly consider Plaintiff's right hand impairments including his carpal tunnel.

Plaintiff also argues the ALJ erred in not finding Plaintiff's hernias were a severe impairment.  ECF No. 9 at 5.  The ALJ concluded the hernias to be non-severe because they occurred sporadically, were acute or transient, or otherwise did not cause more than minimal workplace limitations.  The ALJ cited to an emergency department visit by Plaintiff on March 15, 2021 where Plaintiff reported severe pain related to ongoing hernias (Tr. 447), however, a CT scan revealed no hernia incarcerations, only some constipation.  Tr. 448.  On September 24, 2020 Plaintiff presented to the emergency department with reported chronic neck pain and numbness in upper and lower extremities but a physical examination revealed a soft, non-tender abdomen.  Tr. 451.  On May 21, 2022, Plaintiff reported groin pain after lifting a dresser and reported a history of inguinal hernia

that had worsening pain.  However, a CT scan revealed no acute findings or signs

of an incarcerated hernia and the practitioner attributed Plaintiff's symptoms to a

groin strain.  Tr. 481-482.  Plaintiff contends his incarceration interrupted his care,

however, the ALJ cites to records of treatment Plaintiff received while incarcerated

for issues with his teeth but never reported for problems with his hernias.  Tr. 522.

Finally, During Plaintiff's hearing, he testified he experienced sharp pains

from his hernias and could only sit for a few minutes at a time, and could not stand

still sufficiently for any assembly-line work.  But the ALJ concluded in the RFC

findings that Plaintiff could never perform assembly-line work therefore

accounting for Plaintiff's reported inability for such positions.  Tr. 22.  The Court

finds the ALJ did not err in finding Plaintiff's hernias to be non-severe.

## B. Plaintiff's Subjective Symptom Testimony

Next, Plaintiff asserts that the ALJ erred by failing to provide specific, clear,

and convincing reasons for rejecting Plaintiff's subjective complaints.  ECF No. 9

at 8-17.

In social security proceedings, a claimant must prove the existence of

physical or mental impairment with "medical evidence consisting of signs,

symptoms, and laboratory findings."  20 C.F.R. § 404.1508.  A claimant's

statements about his or her symptoms alone will not suffice.  20 C.F.R. §§

404.1508; 404.1527.  Once an impairment has been proven to exist, the claimant

need not offer further medical evidence to substantiate the alleged severity of his or her symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). As long as the impairment "could reasonably be expected to produce [the] symptoms," 20 C.F.R. § 404.1529(b), the claimant may offer a subjective evaluation as to the severity of the impairment. *Id.* This rule recognizes that the severity of a claimant's symptoms "cannot be objectively verified or measured." *Id.* at 347 (quotation and citation omitted).

However, in the event an ALJ finds the claimant's subjective assessment unreliable, "the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). In making such determination, the ALJ may consider, *inter alia*: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *See id.* If there is no evidence of malingering, the ALJ's reasons for discrediting the claimant's testimony must be "specific, clear and convincing." *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) (quotation and citation omitted). The ALJ "must specifically identify the testimony she or he finds not to be credible and

must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

Here, the ALJ summarized Plaintiff's alleged symptoms in connection with his disability application and stated Plaintiff "testified that he has a history of hernia, spine, and neck issues requiring surgery; that he has frequent pain with upper extremity pain and manipulative dysfunction; limited capacity for sitting, standing, and walking; back and neck pain with nerve issues; and anxiety with panic attacks." Tr. 22. The ALJ then concluded that the medical evidence confirmed the existence of medical impairments which could reasonably be expected to cause some of Plaintiff's alleged symptoms. *Id*. However, the ALJ did not credit Plaintiff's statements about the intensity, persistence, and limiting effects of the symptoms. *Id*. Rather, the ALJ concluded that Plaintiff's statements were "not entirely consistent with the medical evidence and other evidence in the record." *Id*. The ALJ concluded the severity and frequency of both Plaintiff's reported pain and mental symptoms "are not corroborated by the longitudinal observations and findings during routine appointments." Tr. 23, 25. Because there is no evidence of malingering in this case, the Court must ultimately determine whether the ALJ provided specific, clear, and convincing reasons not to credit Plaintiff's testimony of the limiting effects of her symptoms. *Chaudhry*, 688 F.3d at 672. The Court finds the ALJ has not done so here.

The ALJ merely summarizes Plaintiff's medical record and concluded it did not corroborate Plaintiff's claimed severity and frequency of symptoms. "[T]he ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the *degree* of symptom alleged." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996); *see also Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) ("[A]n ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain."). Moreover, the ALJ does not provide any explanation or identify how the summarized medical records undermine any of Plaintiff's hearing testimony. *See Holohan*, 246 F.3d at 1208 ("[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must *explain* what evidence undermines the testimony."). In fact, the only reference to Plaintiff's credibility was the ALJ's reasoning that several inconsistent statements made by Plaintiff regarding his history of stimulant abuse "detract from the reliability of his self-report." Tr. 26. The ALJ did not point to any other evidence in discounting Plaintiff's allegations such as his daily activities, evidence that his symptoms improved with treatment or medical noncompliance, or past work history. *See Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014) (explaining ALJ may properly discount a claimant's subjective complaints when the daily activities demonstrate an inconsistency between a claimant's testimony

and the claimant's reported activities). This alone is not a clear and convincing reason to discount Plaintiff's subjective symptom testimony.

This error is not harmless as the degree of Plaintiff's alleged symptoms may require a more restrictive RFC. During Plaintiff's testimony, he stated he could only sit for a few minutes at a time before losing feeling in his legs (Tr. 82), however, the ALJ's RFC found that Plaintiff could sit for six out of eight hours. Tr. 21. The vocational expert determined that a modification to the RFC to permit standing/sitting as needed would erode the available identified positions by 50%. Tr. 100. Further, Plaintiff testified that he had severe pain in both hands with his right hand being limited in use to only a few minutes at a time (Tr. 79, 86-87). The RFC stated Plaintiff could frequently handle, finger and feel with the bilateral upper extremities (Tr. 21), however, the vocational expert testified that further limiting handling, fingering, and feeling with the bilateral upper extremities from frequent to occasional would preclude all light and sedentary work. Tr. 99. Therefore, the ALJ's failure to provide clear and convincing reasons in discounting Plaintiff's subjective symptoms was not a harmless error and remand is necessary.

On remand, the ALJ must reevaluate Plaintiff's subjective symptom testimony.

//

//

ORDER GRANTING PLAINTIFF'S OPENING BRIEF ~ 16

### C. Medical Opinions

Plaintiff argues the ALJ erred in evaluating the medical opinion evidence of T. Genthe, Ph.D., P. Metoyer, Ph.D., D. Morgan, Ph.D., M. Washington, ARNP, W. Hurley, M.D., and S. Clifford, M.D.

As Plaintiff's alleged onset date was August 25, 2018, the new regulations for how an ALJ must evaluate medical opinion evidence applies. Under the new regulations, the ALJ will no longer "give any specific evidentiary weight … to any medical opinion(s)." *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844-01, 5867-68. Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. § 416.920c(a)-(b). The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant, specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" including but not limited to "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 416.920c(c)(1)-(5).

The ALJ is required to explain how the most important factors, supportability and consistency, were considered. 20 C.F.R. § 416.920c(b)(2).

These factors are explained as follows:

(1) *Supportability.*  The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) *Consistency.*  The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 416.920c(c)(1)-(2).

The ALJ may, but is not required to, explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. § 416.920c(c)(b)(2).  However, where two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported … and consistent with the record … but are not exactly the same," the ALJ is required to explain how "the most persuasive factors" were considered.  20 C.F.R. § 416.920c(c)(b)(2).

These regulations displace the Ninth Circuit's standard that require an ALJ to provide "specific and legitimate" reasons for rejecting an examining doctor's opinion.  *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).

*1.  T. Genthe, Ph.D., P. Metoyer, Ph.D., and D. Morgan, Ph.D.*

Plaintiff argues the ALJ failed to sufficiently explain how Dr. Genthe, Dr.

Metoyer, and Dr. Morgan's medical opinions were inconsistent with the record. Dr. Metoyer performed a mental evaluation on Plaintiff October 23, 2021 and found Plaintiff has issues with anxiety, PTSD, mood symptoms, and ADHD symptoms.  Among other things, Dr. Metoyer concluded that these issues resulted in Plaintiff being moderately to markedly impaired in his ability to interact with co-workers and the public, his ability to maintain regular attendance at work, and his ability to deal with stress encountered in the work place.  Tr. 468.  He also found Plaintiff to be moderately impaired in his ability to complete a normal work day or work week without interruption.  *Id.*

Dr. Genthe performed a psychiatric evaluation on Plaintiff December 15, 2020 and reported he had marked limitations in performing tasks following detailed instructions, adapting to changes in a routine work setting, communicating effectively in a work setting, maintaining appropriate behavior in a work setting, and completing a normal work day and week without interruptions from psychologically based symptoms.  Tr. 628-29.  Dr. Genthe also reported Plaintiff as having moderate limitations in his ability to among other things perform activities within a schedule and maintain regular attendance, learn new tasks, and set realistic goals.  *Id.*

Finally, Dr. Morgan performed a psychiatric evaluation on Plaintiff December 21, 2022 and reported Plaintiff as having marked limitations in his

1    ability to perform activities within a schedule and maintain regular attendance,

2    adapt to changes in routine, communicate and perform effectively in a work

3    setting, and complete a normal work day and work week without interruptions

4    from psychologically based symptoms.  Tr. 637.  Dr. Morgan reported Plaintiff as

5    having moderate limitations in his ability to among other things, learn new tasks,

6    performing tasks following detailed instructions, perform routine tasks without

7    supervision, and set realistic goals.  *Id.*

8        The ALJ did not find any of these medical opinions persuasive in part

9    because they did not have the opportunity to review the updated record.  Tr. 28.

10   Moreover the ALJ found that the doctor's opinions of Plaintiff's marked

11   limitations were out of proportion with the longitudinal record that showed

12   Plaintiff with unremarkable cognition during routine appointments, an ability to

13   interact appropriately with providers, an ability to maintain appropriate hygiene

14   and grooming, the doctors' own findings that Plaintiff had minor cognitive deficits

15   but had capacity for simple routine work, and Plaintiff's inconsistent statements

16   that detract from his reliability.  The ALJ concluded these findings suggest greater

17   functioning than alleged by Plaintiff and opined by Drs. Genthe, Metoyer, and

18   Morgan.  Tr. 28.

19       The Court finds that several of the ALJ's reasons for discounting Dr.

20   Metoyer, Dr. Genthe, and Dr Morgan's medical opinions were not reasonably

inconsistent with their findings of Plaintiff's moderate to marked limitations, particularly in his ability to complete a normal workday and week without interruption from his psychologically based symptoms.  First, Plaintiff's ability to maintain appropriate hygiene and grooming is not an apparent inconsistency with each doctor's conclusion that Plaintiff would have great difficulty in completing a normal workday or week without interruption.

Second, the ALJ did not provide sufficient support in concluding that each examiners own findings indicating Plaintiff had minor cognitive deficits but could still perform simple routine work was inconsistent with their findings of marked limitations.  Dr. Genthe rated Plaintiff with moderate to marked limitations related to his ability to perform basic work activities for ten out of the thirteen categories of basic work activities but found Plaintiff had mild limitations with performing routine tasks.  Tr. 628-29.  Dr. Genthe also found Plaintiff's memory, fund of knowledge, concentration, abstract thought, and insight and judgment not within normal limits.  Tr. 631-32.  He concluded that at that time, Plaintiff was "unlikely to function adequately, and /or consistently in a work setting until psychological symptoms have been managed more effectively."  Tr. 629.  Dr. Morgan noted Plaintiff's depression was of moderate severity with daily frequency, his PTSD was moderate to marked severity with daily frequency, and his antisocial personality was moderate to marked severity with daily frequency.  Tr. 636.  Dr.

Morgan also concluded Plaintiff had moderate to marked limitations related to Plaintiff's ability to perform basic work activities for twelve out of the thirteen categories with the only mild limitation in Plaintiff's ability to perform routine tasks.  Tr. 637.  As for Dr. Metoyer, he reported Plaintiff describing challenges in his personal life and prior work environments due to his anxiety, PTSD, mood symptoms and ADHD symptoms and difficulty in concentration and losing his train of thought.  Tr. 468.  The ALJ's reasoning that each doctors report that Plaintiff's is able to perform simple routine tasks discounted their findings of all other moderate to marked limitations is not clear and convincing.

Finally, the ALJ's reasoning that inconsistent statements made by Plaintiff detract from the reliability of his self-report is insufficient due to the Court's previous finding that the ALJ did not present clear and convincing reasoning in discounting Plaintiff's subjective testimony.  *See Morgan v. Com'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) ("A physician's opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted.").

For these reasons, the Court finds the ALJ did not provide specific and legitimate reasons for discounting Dr. Metoyer, Dr. Genthe, and Dr. Morgan's medical opinions.  The Court finds this also to be reversible error as these three

1  medical opinions support Plaintiff's allegations that his mental impairments

2  support his claims for disability.

3      *2.  W. Hurley, M.D. and S. Clifford, M.D.*

4      Plaintiff argues the ALJ erred in failing to assess the supportability factor in

5  finding Dr. Hurley and Dr. Clifford's opinions persuasive.  ECF No. 9 at 21.  An

6  ALJ may reject a medical opinion as either being inconsistent or unsupported.  *See*

7  *Woods v. Kijakazi*, 32 F.4th 785, 793 (9th Cir. 2022) (holding ALJ substantially

8  supported finding that medical opinion unpersuasive where it was inconsistent with

9  the overall treating notes).  Therefore, it follows that an ALJ must find a medical

10  opinion to be both consistent and supported for it to be persuasive.  *Tracy F. v.*

11  *O'Malley*, No. 122CV00233DCNDKG, 2024 WL 1701572, at *4 (D. Idaho Apr.

12  19, 2024).

13      In this case, the ALJ found Dr. Hurley and Dr. Clifford's medical opinions

14  to be persuasive because they were "somewhat consistent with the longitudinal

15  record," however the ALJ did not assess the supportability factor.  This was an

16  error that cannot be considered harmless because the ALJ could not find Dr.

17  Hurley and Dr. Clifford's medical opinions to be persuasive unless they were both

18  consistent and supported.

19      *3.  M. Washington, ARNP*

20      Plaintiff argues the ALJ erred in assessing ARNP Marquetta Washington's

ORDER GRANTING PLAINTIFF'S OPENING BRIEF ~ 23

("Washington") evaluation.  ECF No. 9 at 20.  Indeed, it appears that while the

ALJ noted that Washington opined that Plaintiff could perform a full range of light

work, she did not explain whether she found the opinion persuasive or not.  Instead

the ALJ pasted in the explanation for finding Wayne Hurley, M.D., and Susan

Clifford's, M.D., medical opinions persuasive.  Tr. 27.  Defendant argues this was

harmless error because Washington opined that Plaintiff could perform work with

even less restrictive limitations than provided in the RFC.  ECF No. 12 at 17.  Even

so, because the Court finds remand is warranted for the reasons stated prior, the

ALJ is directed to also reassess Washington's medical opinion.

### CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the

ALJ's decision is not supported by substantial evidence and free of harmful legal

error.  On remand, the Commissioner is instructed to reconsider the severity of

Plaintiff's right hand impairment, Plaintiff's subjective symptom testimony, and

the medical opinion evidence in accordance with this opinion.

//

//

//

//

//

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Plaintiff's Opening Brief (ECF No. 9) is **GRANTED**.

2.  Commissioner's Brief (ECF No. 12) is **DENIED**.

3.  The Court enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this Order pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to enter this Order, furnish copies to counsel, and **close the file**.

DATED April 7, 2025.



THOMAS O. RICE
United States District Judge